UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

Priority  ____
Send      ____
Enter     ____
Closed    ____
JS-5/JS-6 ____
Scan Only ____

| | |
|---|---|
| **CASE NO.:** <u>CV 15-02034 SJO (VBKx)</u> | **DATE:** <u>December 8, 2015</u> |

**TITLE:**     <u>United States v. Bussell</u>

========================================================================
**PRESENT:  THE HONORABLE S. JAMES OTERO, UNITED STATES DISTRICT JUDGE**

| | |
|---|---|
| Victor Paul Cruz | Not Present |
| Courtroom Clerk | Court Reporter |

**COUNSEL PRESENT FOR PLAINTIFFS:**     **COUNSEL PRESENT FOR DEFENDANTS:**

Not Present                             Not Present

========================================================================
**PROCEEDINGS (in chambers): ORDER GRANTING IN PART AND DENYING IN PART THE GOVERNMENT'S MOTION FOR SUMMARY JUDGMENT REDUCING PENALTY ASSESSMENT TO JUDGMENT** [Docket No. 23]; **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS** [Docket No. 27]

These matters are before the Court on Plaintiff the United States of America's ("Plaintiff" or the "Government") Motion for Summary Judgment Reducing Penalty Assessments to Judgment ("Motion"), filed October 27, 2015, and Defendant Letantia Bussell's ("Defendant") Motion for Judgment on the Pleadings ("Defendant's Motion"), filed November 3, 2015. Defendant opposed the Motion ("Opposition")[1] on November 16, 2015, and the Government replied ("Reply") on November 18, 2015. The Government opposed Defendant's Motion ("Government's Opposition") on November 9, 2015, and Defendant did not Reply. The Court found these matters suitable for disposition without oral argument and vacated the hearings set for December 7, 2015. *See* Fed. R. Civ. P. 78(b). For the following reasons, the Motion is **GRANTED IN PART** and **DENIED IN PART**. Defendant's Motion is **GRANTED IN PART** and **DENIED IN PART.**

I.     FACTUAL AND PROCEDURAL BACKGROUND

    A.     Factual Background

Defendant was married to John Bussell ("Mr. Bussell") from 1972 until his death in 2002. (Index of Exs. and Decls. in Supp. of Pl.'s Mot. ("Index"), ECF No. 24-1, Ex. 11 ¶ 3.) Defendant is a licensed physician who specializes in dermatology. *Bussell v. Comm'r*, 130 T.C. 222, 224 (2008). Defendant has maintained a dermatology practice in Beverly Hills, California since 1979. *Id.* From

---

[1] Defendant exceeded the twenty-page limit, in violation of the Court's Initial Standing Order. In the interest of considering the Motion on its merits, the Court adjudicates the two pages that exceeded the twenty page limit, but cautions Defendant to carefully read and comply with the Court's Standing Order.

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

| | |
|---|---|
| **CASE NO.:** <u>CV 15-02034 SJO (VBKx)</u> | **DATE:** <u>December 8, 2015</u> |

1981 through approximately 1995, when Defendant filed for bankruptcy, Defendant conducted her medical practice through various corporations, including Letantia Bussell M.D. Inc.  *Id.*

Before Mr. Bussell and Defendant (collectively, the "Bussells") filed for bankruptcy in 1995, the Bussells restructured Defendant's medical practice to conceal her interest in the practice. (Index, Ex. 21 at IOE_000104-105.)[2]  The Bussells funneled Defendant's profits between 1993 and 1995, which totaled $1,149,048, into a non-interest bearing account with Sanwa Bank ("Sanwa Account").  The Bussells maintained control over the Sanwa Account, but the Sanwa Account was under the name of BBL Medical Management, Inc. ("BBL"). (Index, Ex. 21, at IOE_000105.)  In January 1996, Defendant transferred the balance of the Sanwa Account to a personal bank account at Swiss Bank Corp.  *Bussell v. Comm'r*, T.C. Memo. 2005-77, 2005 WL 775755 at *4 (April 7, 2005).  Swiss Bank Corp. later became known as UBS AG. (Index, Ex. 11 ¶ 2.)  The Defendant failed to disclose the funds from the Sanwa Account and her interest in the Swiss account in her 1996 tax return.  *Id.*

   B. <u>The Subject Account and Defendant's Tax Filings</u>

On January 29, 1997, the Bussells opened a second bank account with Swiss Bank Corp., account no. xxxx3235 (the "Subject Account"). (*See* Index, Ex. 4; Ex. 11 ¶ 2.)  As part of the process of opening the Subject Account, the Bussells signed a Swiss Bank Corp. document naming themselves as the beneficial owners of the account. (*See* Index, Ex. 4. at IOE_000011.)  The Bussells also signed a Swiss Bank Corp. document entitled "General power of attorney" granting Todd John Bussell, their son, signature authority over the Subject Account. (Index, Ex. 4 at IOE_000015.)  Defendant also had signature authority over the Subject Account. (Index, Ex. 4 at IOE_000014.)

On October 15, 2007, Defendant filed her individual income tax return for the 2006 tax year. (*See* Index, Ex. 4.)  In her 2006 tax return, Defendant did not report the interest income earned from the Subject Account. (Index, Ex. 11  ¶ 6.)  Furthermore, Defendant did not file a Treasury Department Form 90-22.1, Report of Foreign Bank and Financial Accounts ("FBAR Form"), disclosing her financial interest in the Subject Account for the 2006 tax year. (Index, Ex. 11  ¶ 6.)  During 2006, the Subject Account had a balance that exceeded $10,000. (Index, Ex. 11  ¶ 4.)  On December 31, 2006, the Subject Account had a balance of $2,241,027. (Index, Ex. 11  ¶ 5.)

On October 23, 2007, Todd Bussell wrote to UBS AG and asked the bank to liquidate the Subject Account, as well as a second account, and requested that the balances be transferred to two accounts at Finter Bank Zurich. Todd Bussell requested that 50% of the balances be transferred

---

   [2]  Pursuant to Federal Rule of Evidence 201, the Court takes judicial notice of Exhibits 18 through 23 of the Index of Exhibits filed concurrently with the Government's Request for Judicial Notice. (*See generally* Index.)  Each of these Exhibits represents a publicly available record or filing, and is therefore not reasonably subject to dispute.  *See* Fed. R. Evid. 201(b)(2).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

CASE NO.: **CV 15-02034 SJO (VBKx)**          DATE: **December 8, 2015**

to an account with Wakaduku Foundation as the beneficiary ("Wakaduku Account"), and the other 50% transferred to an account with Valmadera Foundation as the beneficiary ("Valmadera Account"). (Plaintiff's Proposed Statement of Uncontroverted Facts ("PSUF"), ECF No. 23-1, ¶ 16; *See also* Index, Ex. 5 at IOE 000018.)

Several transfers then occurred between the Subject Account and the other accounts. On November 1, 2007, the Subject Account had zero balance. (Index, Ex. 5 at IOE 000021.) On November 9, 2007, the Subject Account had a closing balance of $2,918,299.28. (Index Ex. 5 at IOE 000021.) Pursuant to Todd Bussell's request, on November 13, 2007, UBS AG made three separate payments to the Wakaduku Account and the Valmadera Account. (Index Ex. 5 at IOE 000022.) By November, 14, 2007, the Subject Account had zero balance again. (Index Ex. 5 at IOE 000022.)

  C. History of Legal Proceedings Against the Bussells

On May 3, 2000, an Indictment was filed against the Bussells in the Central District of California. (Index, Ex. 18 at IOE_000074.) On January 31, 2002, a Redacted First Superseding Indictment (the "Indictment") was filed against the Bussells in which the Government brought various counts related to bankruptcy fraud and attempted tax evasion. (PSUF ¶ 3.)

On February 6, 2002, a jury convicted Defendant of the following: (1) one count of violating 18 U.S.C. § 371 (conspiracy to commit an offense against or defraud the United States); (2) two counts of violating 18 U.S.C. § 152(1) (concealment of assets in bankruptcy); (3) two counts of violating 18 U.S.C. § 152(3) (false declaration and statement as to avoid material matters); and (4) one count of violating 26 U.S.C. § 7201 and 18 U.S.C. § 2 (evading payment of income tax). (PSUF ¶ 3.)

After the conviction, on or about April 29, 2002, the Internal Revenue Service ("IRS") issued a jeopardy levy with regard to the Bussells' income tax liabilities for 1983, 1984, 1986, and 1987. (Index, Ex. 21, at IOE_000107.) The IRS also approved a jeopardy assessment against the Bussells for the 1996 tax year ("1996 Assessment"). The total amount of the jeopardy levy/assessment was $3.4 million, with $1,283,522 attributable to the 1996 tax year and the remaining $2,116,478 to the 1980s. (Index, Ex. 21, at IOE_000107.) The government explained that it levied a jeopardy assessment in part because:

> [I]n 1996 [Defendant] received $1,149,048 from financial accounts which were previously undisclosed and not reported on [Defendant's] Individual Income Tax Return Form 1040 for this period. These funds were concealed as part of the conspiracy to commit bankruptcy fraud.

(Index, Ex. 21, at IOE_000115.)

On August 23, 2002, Defendant filed a complaint in federal district court seeking review of the 1996 Assessment pursuant to 26 U.S.C. § 7429(b). (PSUF ¶ 4.) On December 11, 2002, the

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

| | |
|---|---|
| **CASE NO.:** <u>CV 15-02034 SJO (VBKx)</u> | **DATE:** <u>December 8, 2015</u> |

Court issued an order granting the Government's motion for summary judgment and denying Defendant's motion for summary judgment. (PSUF ¶ 5.) The Court held that the IRS's jeopardy determination was reasonable because Defendant's criminal history demonstrated that she had failed to report income and engaged in a scheme to hide assets from the IRS in an attempt to defeat the collection of unpaid taxes. (PSUF ¶ 5.)

While the jeopardy case was pending, Defendant filed a petition with the United States Tax Court (the "Tax Court") seeking a redetermination of deficiency in the Bussells' 1996 taxes, as well as a redetermination of the civil tax fraud penalty imposed by the IRS pursuant to 26 U.S.C. § 6663(a). (PSUF ¶ 7.) The Tax Court concluded that the Bussells maintained, and failed to report, two foreign bank accounts in their 1996 tax return, a Swiss account and a "Syntex" bank account. *Bussell v. Commissioner of Internal Revenue*, T.C. Memo. 2005-77, 2005 WL 775755 at *4 (April 7, 2005). The Tax Court held that Defendant was liable for the civil fraud penalty imposed pursuant to 26 U.S.C. § 6663(a), a decision that was affirmed by the Ninth Circuit Court of Appeals. (PSUF ¶ 8.)

      D.    <u>Procedural History of the Instant Case</u>

On June 5, 2013, the IRS assessed against the Defendant an FBAR penalty in the amount of $1,221,806 ("Assessment") for her alleged willful failure to disclose and report her interest in the Subject Account for the 2006 tax year. (Index, Ex. 1.) On March 19, 2015, the Government initiated the instant action to recover from the Defendant the Assessment and to reduce the Assessment to a judgment against Defendant. (*See generally* Compl., ECF No. 1; Mot., ECF No. 23.) The Government seeks a judgment ordering Defendant to pay $1,361,694.41, which includes the Assessment, the penalty for failure-to-pay the Assessment, and interest as of January 23, 2015, plus any accruing interest thereafter. (*See generally* Compl.; Index, Ex. 2.)

II.    <u>DISCUSSION</u>

      A.    <u>Legal Standard for Judgment on the Pleadings</u>

"After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c) ("Rule 12(c)"). "The principal difference between motions filed pursuant to [Federal Rule of Civil Procedure] 12(b) and Rule 12(c) is the time of filing. Because the motions are functionally identical, the same standard of review applicable to a Rule 12(b) motion applies to its Rule 12(c) analog." *Dworkin v. Hustler Magazine Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989). In considering a motion for judgment on the pleadings, "[a]ll allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party." *Buckey v. Cnty. of L.A.*, 968 F.2d 791, 794 (9th Cir. 1992) (citation omitted). A complaint should not be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Gibson v. United States*, 781 F.2d 1334, 1337 (9th Cir. 1986) (citation omitted). Judgment on the pleadings is proper when "there is no issue of material fact in dispute, and the moving party is entitled to judgment as a matter of law." *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

CASE NO.: **CV 15-02034 SJO (VBKx)**           DATE: **December 8, 2015**

### B. Legal Standard for Summary Judgment Motion

Federal Rule of Civil Procedure 56(a) mandates that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of establishing the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted).

In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party does not need to produce any evidence or prove the absence of a genuine issue of material fact. *See Celotex*, 477 U.S. at 325. Rather, the moving party's initial burden "may be discharged by 'showing'—that is, pointing out to the District Court—that there is an absence of evidence to support the nonmoving party's case." *Id.* "Summary judgment for a defendant is appropriate when the plaintiff 'fails to make a showing sufficient to establish the existence of an element essential to [his] case, and on which [he] will bear the burden of proof at trial.'" *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 805-06 (1999) (quoting *Celotex*, 477 U.S. at 322).

Once the moving party meets its initial burden, the "party asserting that a fact cannot be or is genuinely disputed must support the assertion." Fed. R. Civ. P. 56(c)(1). "The mere existence of a scintilla of evidence in support of the [nonmoving party]'s position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986); *accord Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) ("[O]pponent must do more than simply show that there is some metaphysical doubt as to the material facts."). Further, "[o]nly disputes over facts that might affect the outcome of the suit . . . will properly preclude the entry of summary judgment [and f]actual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. At the summary judgment stage, a court does not make credibility determinations or weigh conflicting evidence. *See Id.* at 249. A court is required to draw all inferences in a light most favorable to the nonmoving party. *Matsushita*, 475 U.S. at 587.

In the instant case, the Government argues that it is entitled to summary judgment, ordering Defendant to pay an FBAR penalty of $1,361,694.41, because Defendant willfully violated the FBAR tax regulations by failing to report or otherwise disclose her interest in the Subject Account for 2006. (Mot. 2.) Defendant responds by alleging a series of affirmative defenses. The Court begins by considering the Government's argument and then turns to the Defendant's affirmative defenses, as alleged in her briefing on the Government's Motion as well as Defendant's Motion for Judgment on the Pleadings.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

| | |
|---|---|
| CASE NO.:  <u>CV 15-02034 SJO (VBKx)</u> | DATE:  <u>December 8, 2015</u> |

C.     Section 5314 Violation

Section 5314 of Title 31 of the United States Code authorizes the Secretary of the Treasury to require United States citizens to report certain transactions with foreign financial agencies. 31 U.S.C. § 5314. Under the implementing regulations of § 5314, "[e]ach United States person having a financial interest in, or signature or other authority over, a bank, securities, or other financial account in a foreign country shall report such relationship" to the IRS for each year in which such relationship exists, and shall provide such information on the FBAR Form. 31 C.F.R. § 1010.350(a). United States citizens who have an interest in a foreign bank, securities, or other financial account must report that interest to the IRS by June 30 of the year following any calendar year in which the aggregate balance of such account exceeded, at any time during the year, $10,000. 31 C.F.R. § 1010.306(c). If any person willfully fails to timely report interest in a foreign bank, securities, or other financial account to the IRS, then the maximum penalty shall be increased to the greater of either (1) $100,000, or (2) fifty percent of the balance in the account at the time of the violation. 31 U.S.C. § 5321(a)(5)(C)-(D).

1.     FBAR Violation

The Court grants summary judgment to the Government on the issue of whether Defendant violated the FBAR tax regulations. Defendant stipulates and agrees not to argue against the allegations that (1) Defendant is a United States citizen, (2) in 2006, Defendant had a financial interest in the Subject Account,[3] (3) in 2006, the Subject Account had a balance that exceeded $10,000, and (4) Defendant failed to report her interest in the Subject Account for the 2006 tax year. (*See generally* Index, Ex. 11.)

The Government's Motion is **GRANTED** to the extent that the Defendant violated § 5314 and its implementing regulations by failing to report her interest in the Subject Account for the 2006 tax year.

2.     Willfulness

The Court further finds that the Government is entitled to summary judgment on the issue of Defendant's willfulness. Defendant stipulates and agrees not to argue against the allegations that (1) Defendant **willfully** failed to file an FBAR Form reporting her financial interest in the Subject Account for the 2006 tax year, and (2) Defendant **willfully** failed to report her financial interest in the Subject Account on her 2006 federal income tax return. (*See generally* Index, Ex. 11.)

Moreover, the record demonstrates that Defendant was willful in failing to report her financial interest in the Subject Account. Although § 5321(a)(5) does not define willfulness, courts adjudicating civil tax matters have held that an individual is willful where he/she exhibits a reckless

---

[3] Defendant named herself as the beneficial owner of the Subject Account, and Defendant also had signature authority over the Subject Account. (*See* Index, Ex. 4.) Thus, Defendant had a financial interest in the Subject Account.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

| | |
|---|---|
| **CASE NO.:** <u>CV 15-02034 SJO (VBKx)</u> | **DATE:** <u>December 8, 2015</u> |

disregard of a statutory duty.  *See Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 57 (2007).  Here, Defendant clearly acted with reckless disregard.  Defendant has been convicted of bankruptcy fraud and tax fraud for her failure to disclose offshore accounts, and Defendant has been subjected to civil penalties for her failure to disclose offshore bank accounts.  (*See generally*, *supra* Section I(C).)  Defendant is aware of her statutory duty to report offshore accounts.  Nevertheless, Defendant filed her 2006 tax return without reporting the Subject Account, and without filing an FBAR Form.  Instead of reporting the Subject Account, Defendant liquidated the Subject Account shortly after filing her tax returns.

Accordingly, the Government's Motion is **GRANTED** to the extent that Defendant **willfully** failed to report her interest in the Subject Account for 2006.  Pursuant to 31 U.S.C. § 5321(a)(5)(C)-(D), the IRS assessed an FBAR penalty against Defendant.[4]

       3.    <u>Affirmative Defenses</u>

Defendant spends the bulk of her Opposition and her Motion for Judgment on the Pleadings asserting the following affirmative defenses against the penalty Assessment:  (1) because the Subject Account was the subject of prior legal proceedings against Defendant, the Assessment violates the constitutional protection against double jeopardy, (2) the Assessment is precluded by the applicable statute of limitations ("SOL"), (3) the Assessment is fundamentally unfair, as against Defendant's due process rights, (4) laches bar the Assessment, (5) the Assessment violates the Ex Post Facto Clause, (6) the Assessment violates the Excessive Fines Clause of the Eight Amendment, and (7) the Government's use of banking evidence in this case is not permitted by a United States treaty with Switzerland. (Def.'s Opp'n Pl.'s Mot. Summ. J. ("Opp'n"), EFC No. 29, 1.)  The Court considers each of the defenses in turn and ultimately reduces the FBAR penalty judgment, based on Eighth Amendment concerns.[5]

       a.    <u>Double Jeopardy</u>

Defendant begins by contending that the present Assessment action by the Government violates the Fifth Amendment's protection against double jeopardy.  Defendant asserts that the funds from the Sanwa Account, which amounted to $1,149,048, were transferred to the Subject Account in 1997, and that she has already been punished for her failure to report these funds.  (*See* Def.'s Mot. for J. on the Pleadings ("Def.'s Mot."), ECF No. 27, 1; Def.'s Opp'n Pl.'s Mot. Summ. J. ("Opp'n"), EFC No. 29, 3.)

---

   [4]  Defendant stipulates and agrees not to argue against the allegation that the maximum balance in the Subject Account for the 2006 tax year was $2,241,027.  (Index, Ex. 11 ¶ 5.)

   [5]  Defendants did not expressly plead in their answer defenses based on due process, the ex post facto clause, or the improper use of evidence based on a treaty with Switzerland.  (*See* Answer, ECF No. 9.)  In the interest of deciding this case on the merits, the Court addresses and ultimately denies these defenses.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

CASE NO.:  **CV 15-02034 SJO (VBKx)**          DATE:  **December 8, 2015**

The Court finds that no reasonable jury could find that the Subject Account was the subject of Defendant's prior legal proceedings, and therefore, **GRANTS** summary judgment to the Government and **DENIES** Defendant's Motion on this affirmative defense.  The Bussells had at least two accounts in Switzerland, and the Defendant conflates these two accounts in her briefing.  The Bussells transferred the full balance of the Sanwa Account to "a Swiss account" at Swiss Bank Corp, and the last transfer to this Swiss account was on or about June 11, 1996.  *Bussell v. Commissioner*, T.C. Memo. 2005-77, 2005 WL 775755 at *4-5 (April 7, 2005).  The Bussells then opened the Subject Account, a second Swiss account, on January 29, 1997.  (*See* Index, Ex. 4.)  The funds from the Sanwa Account, which were the subject of prior penalties, could not have been transferred to the Subject Account because the Sanwa Account funds were transferred to the first account in 1996, six months before the Subject Account even existed.

        b.     Statute of Limitations

The Court next determines whether the IRS assessed the FBAR penalty outside the applicable SOL.  The Secretary of the Treasury may assess a civil penalty for willfully failing to timely report financial interests in foreign accounts "at any time before the end of the 6-year period beginning on the date of the transaction with respect to which the penalty is assessed."  31 U.S.C. § 5321(b)(1).  Pursuant to 31 C.F.R. § 1010.306(c), the deadline to report any interest in foreign accounts is "June 30 of the year following any calendar year in which the aggregate balance of such account exceeded, at any time during the year, $10,000."

The Defendant argues that the SOL began to run no later than June 30, 2002, because the Government has known about the Subject Account ever since it issued a jeopardy assessment on April 29, 2002 for funds Defendant deposited in the Subject Account.  (Opp'n 3.)  The Defendant also argues that, because the SOL began to run on June 30, 2002, the last day to assess an FBAR penalty would have been on June 30, 2008.  (Opp'n 3.)

The Court disagrees with Defendant, **GRANTS** summary judgment to the Government, and **DENIES** Defendant's Motion on this affirmative defense.  The SOL began to run on June 30, 2007, not June 30, 2002.  The former date represents the Defendant's statutory deadline for reporting her financial interest in the Subject Account for the 2006 tax year.  *See Moore v. United States*, No. 13-CV-02063-RAJ, 2015 WL 1510007 at* 2 (April 1, 2015) (holding that the six-year limitations period for assessing an FBAR civil penalty for 2005 would have run on July 1, 2012, six years after the June 30, 2006 deadline for submitting an FBAR for 2005).  The IRS assessed Defendant's FBAR penalty on June 5, 2013, which is less than a month before June 30, 2013, the last day to assess an FBAR penalty against Defendant, based on a violation that took place on June 30, 2007.

        c.     Due Process

The Court next determines whether the Assessment violates Defendant's due process rights.  Although procedural due process is a notoriously difficult right to define, this right generally

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

CASE NO.: <u>CV 15-02034 SJO (VBKx)</u>     DATE: <u>December 8, 2015</u>

expresses the principle that a litigant is entitled to fundamental fairness in court and administrative proceedings. *See Lassiter v. Dep't of Soc. Servs. of Durham Cnty.,* 452 U.S. 18, 25 (1981).

Here, Defendant's due process argument is essentially a restatement of the SOL defense. According to Defendant, the Assessment is fundamentally unfair because the Government delayed the instant action. (Opp'n 6.) Defendant contends that the Government knew of the Subject Account in 2002, but the Government waited until 2013 to issue the Assessment. (Opp'n 6.) Defendant also argues that the IRS chose 2006 as the assessment year because in 2004 "Congress . . . increased the maximum penalty from $100,000 to a theoretical number" allowing the IRS to maximize the penalty. (Opp'n 6.)

The Court **GRANTS** summary judgment to the Government and **DENIES** Defendant's Motion on the due process defense. Even if a jury could find that the Government had knowledge of the Subject Account in 2002, the Government's instant claim did not arise until June 30, 2007, when the Defendant failed to timely report the Subject Account in her 2006 tax return.

### d.    Laches

Defendant goes on to contend that the IRS unreasonably delayed the Assessment and that the Defendant is therefore, entitled to the affirmative defense of laches. (Opp'n 6.) Defendant's laches affirmative defense fails for the same reasons as the due process defense. The Government's claim here did not arise until 2007, and the Court **GRANTS** summary judgment to the Government and **DENIES** Defendant's Motion on the laches defense.

### e.    Ex Post Facto

The Court next considers Defendant's claim that the IRS Assessment violates the Ex Post Facto Clause of the Constitution. "The Constitution of the United States, Article 1, Section 9, prohibits the Legislature of the United States from passing any ex post facto law." *Calder v. Bull*, 3 U.S. 386, 389 (1798). An ex post facto law is one which imposes a punishment for an act which was not punishable when it was committed, or imposes additional punishment. *Id.* at 390.

Defendant argues that because Congress amended the applicable tax statute in 2004, the Assessment amounts to an ex post facto penalty, because the Government had knowledge of the Subject Account in 2002. In 2004, Congress increased the maximum penalty for willful FBAR violations from $100,000 to up to 50 percent of the highest aggregate balance in the account during the taxable year at the time of the violation. 31 U.S.C. § 5321(a)(5)(C)(i). The Government responds that the Ex Post Facto Clause does not apply because Defendant's willful violation of the law occurred more than two years after the law was amended in 2004.

The Court **GRANTS** summary judgment to the Government and **DENIES** Defendant's Motion on the ex post facto defense. The Government imposed the FBAR penalty based on Defendant's conduct related to her 2007 tax return, which was filed more than two years after the applicable law was amended in 2004.

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

| | |
|---|---|
| CASE NO.: <u>CV 15-02034 SJO (VBKx)</u> | DATE: <u>December 8, 2015</u> |

####   f.   <u>Excessive Fines</u>

Defendant next contends that the Assessment violates the Excessive Fines Clause of the Eighth Amendment to the Constitution. *See United States v. Bajakajian*, 524 U.S. 321, 328-29 (1998). Unlike the bulk of Defendant's affirmative defenses, this argument has some merit.

In *Bajakajian*, the Supreme Court held that "a punitive forfeiture violates the Excessive Fines Clause if it is grossly disproportional to the gravity of a defendant's offense." *Id.* at 334. Although the *Bajakajian* court did not set a rigid set of factors to consider in conducting the proportionality inquiry, the Supreme Court did consider: (1) the nature and extent of the crime, (2) whether the violation was related to other illegal activities, (3) the other penalties that may be imposed for the violation, and (4) the extent of the harm caused. *See id.* at 337-340; *see also United States v. $100,348.00 in U.S. Currency*, 354 F.3d 1110, 1122 (9th Cir. 2004); *Balice v. United States Dep't of Agric.*, 203 F.3d 684, 698-99 (9th Cir. 2000).

Although it is a somewhat close call, the Court holds that an FBAR penalty of $1,221,806 violates the Excessive Fines Clause. For the reasons set out below, the Court reduces the Government's Assessment to $1,120,513, to comport with Eighth Amendment requirements.

####   i.   <u>Nature of Offense and Relationship to Other Illegal Activities</u>

Defendant argues that the Assessment is excessive because Defendant's offense is solely a reporting offense, not a serious crime. Furthermore, Defendant argues that there is nothing to show that the funds themselves were involved in or derived from any kind of illegal activity. (Opp'n 16; Def's Mot. 11.)

The Court concludes that the nature of Defendant's alleged offense and the relationship of the offense to other illegal activities do not favor either the Defendant or the Government's position on the applicability of the Excessive Fines Clause. On the one hand, Defendant's offense, tax evasion, is not as serious as some crimes that ultimately trigger civil forfeiture actions. On the other hand, Defendant clearly fits into the class of persons targeted by the Bank Secrecy Act, namely those evading taxes through the use of offshore bank accounts. *See Bajakajian*, 524 U.S. at 338. In *Bajakajian*, the Supreme Court emphasized that the civil forfeiture at issue violated the Eighth Amendment because the defendant, Bajakajian, did not fit into the class of persons for whom the forfeiture statute was principally designed: money launderers, drug traffickers, and tax evaders. *Id.* Moreover, in the instant case, Defendant has not carried her burden to show that the money at issue was derived from a lawful source, which would trigger stronger Eight Amendment protections. *See Balice*, 203 F.3d at 684.

####   ii.   <u>Maximum Criminal and Civil Penalties</u>

The maximum criminal penalty for Defendant's crime, tax evasion, militates in favor of finding that the Government's Assessment violates the Excessive Fines Clause. *See Bajakajian*, 524 U.S. at 338. Under 31 U.S.C § 5322(a), the maximum authorized penalty for a willful criminal violation of 31 U.S.C. § 5314 is a five year sentence and a $250,000 fine. 31 U.S.C § 5322(a).

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

**CASE NO.:   CV 15-02034 SJO (VBKx)**           **DATE:  December 8, 2015**

Defendant's FBAR penalty is $1,221,806, which is almost five times the maximum amount allowed in the criminal statute.

In conducting the Eighth Amendment inquiry, the Court also considers the maximum penalty authorized by the civil statute applicable to Defendant's conduct.  *See Bajakajian*, 524 U.S. at 337-40.  Under 31 U.S.C. § 5321(a)(5)(C), the IRS can assess a civil penalty of up to 50% of the balance of an account at issue, for a willful violation of the tax statute.  Under this provision, Defendant should have been subjected to a maximum penalty of $1,120,513.00, which is $101,293 less than the Assessment amount.

iii.     Harm Caused

Defendant argues that the only harm here is her alleged failure to report the Subject Account to the Government.  (Opp'n 16.)  Defendant further contends that her omission cannot be considered fraud because the Government was already aware of the Subject Account, and any harm caused by the failure to pay taxes is minimal.  (Opp'n 16.)

The Court disagrees with Defendant's contentions.  In *Bajakajian*, the harm caused was minimal because there was no fraud on the Government and no loss to the public.  The Government charged Bajakajian with attempting to leave the United States without reporting that he was transporting more than $10,000 in currency outside the United States, as required by 31 U.S.C. § 5316(a)(1)(A).  Had his crime gone undetected, the Government would have been deprived of the information that $357,144.00 had left the country. Here, on the other hand, the Defendant willfully committed fraud by failing to report her interests in the Subject Account in her 2006 tax return.  This action imposed a tax loss on the public.  *See Vasudeva v. United States*, 214 F.3d 1155, 1161-62 (9th Cir. 2000).

iv.     Conclusion on Defendant's Excessive Fines Claim

After weighing each of the factors relevant to the Excessive Fines inquiry, the Court concludes that the Assessment imposed by the Government raises some Eighth Amendment concerns because the Assessment exceeds the maximum penalty set out in the applicable criminal and civil statutes. The Court **GRANTS IN PART** and **DENIES IN PART** the Government's Motion for Summary Judgment, **GRANTS** Defendant's Motion on the Eighth Amendment claim, and decreases the penalty imposed from $1,221,806 to  $1,120,513.  *Cf.* 18 U.S.C. § 983(g)(4) (2006) ("If the court finds that the forfeiture is grossly disproportional to the offense it shall reduce or eliminate the forfeiture as necessary to avoid a violation of the Excessive Fines Clause of the Eighth Amendment of the Constitution.") This amount represents the maximum amount permitted under the applicable civil statute.

g.     Treaty with Switzerland

Defendant's Motion vaguely asserts that the Government illegitimately obtained information concerning Defendant's Swiss Account from the Swiss government.  (Def's Mot. 8.)  Defendant

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

**CASE NO.: CV 15-02034 SJO (VBKx)**        **DATE: December 8, 2015**

contends that, pursuant to a treaty between the United States and Switzerland, the United States government can only receive information from the Swiss government pertaining to tax violations.

To the extent Defendant attempts to make out an affirmative defense based on the treaty between the United States and Switzerland, the Court **GRANTS** summary judgment to the Government and **DENIES** Defendant's Motion on this affirmative defense. The instant case is clearly a tax collection case, and it is unclear how the Government's conduct runs aground of the treaty.

IV.     <u>RULING</u>

For the foregoing reasons, the Court **DENIES IN PART** and **GRANTS IN PART** the Government's Motion for Summary Judgment. Defendant also filed a Motion for Judgment on the Pleadings while the Government's Motion for Summary Judgment was pending before this Court. The Court **DENIES IN PART** and **GRANTS IN PART** Defendant's Motion. The Court notes that the Defendant is liable for interest on the penalty amount of $1,120,513. (Mot. 14.) Within ten (10) days from the date of this order, the Government shall file a proposed judgment consistent with the Court's findings and conclusions.

IT IS SO ORDERED.